NOT FOR PUBLICATION OR CITATION

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 07-CV-37-GFVT

AHMED TUMEH ALQAM                                                                               PLAINTIFF

VS:                          **MEMORANDUM OPINION AND ORDER**

UNITED STATES OF AMERICA, ET AL.                                                  DEFENDANTS

Ahmed Tumeh Alqam, who is currently confined in the United States Penitentiary-Big Sandy ("USP-Big Sandy") in Inez, Kentucky, has filed a *pro se* civil rights complaint under: (1) 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [Record No. 1] and (2) the Federal Tort Claims Act ("FTCA"), Title 28 U.S.C. §§1346(b), 2671-2680. The plaintiff has also filed a "Motion to Proceed *In Forma Pauperis*" [Record No. 2], which the Court will address by separate Order.

This matter is before the Court for initial screening. 28 U.S.C. §1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

Under *Bivens*, the plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or laws of the United States. Second, he must demonstrate that the defendants allegedly depriving him of those rights acted under color of *federal* law. *Bivens*, 403 U.S. at 397.

This is a *pro se* complaint and, as such, it is held to less stringent standards than those

drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* complaint must be taken as true and construed in favor of the plaintiff. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). Under 28 U.S.C. §1915(e)(2), a district court may dismiss a case at any time if it determines that the action is (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## NAMED DEFENDANTS

The plaintiff named eleven defendants. For ease of reference, the Court has grouped the defendants as follows:

(A) The "BOP Defendants," whom the plaintiff identifies as: (1) Harley Lappin, Director of the Bureau of Prisons ("BOP"); (2) Kim White, Director, Mid-East Region of the BOP; (3) Newton Kendig, Chief Medical Director at the BOP's Central Office, Washington, D.C.; and (4) Suzanne Hastings, Warden of USP-Big Sandy[1];

(B) The "FCI-Gilmer Defendants," whom the plaintiff identifies as follows: (1) Doris M. Williams, Doctor at FCI-Gilmer, Glenville, West Virginia; (2) Janet Bunts, Hospital Administrator at FCI-Gilmer; and (3) Kevin Wendt, Warden of FCI-Gilmer;

(C) The "USP-Big Sandy Doctors," whom the plaintiff identifies as follows: (1) Dr. Vargas and (2) Dr. Ramirez;

(D) The United States of America ("United States"); and

(E) The Bureau of Prisons ("BOP").

---

[1] The Court takes judicial notice of the fact that Suzanne Hastings is no longer the Warden of USP-Big Sandy. The current warden of USP-Big Sandy is Hector Rios.

2

## CLAIMS

Plaintiff alleges that the defendants' collective delay in providing him with the proper medical treatment for his medical condition violated his rights under the Eighth Amendment of the United States Constitution. Plaintiff states that he suffers, and has suffered for a long period of time, from a severe case of sleep apnea. He states that this condition impairs the breathing process. He alleges that he is adversely affected by the condition during both the day and at night, during his sleep.

The plaintiff alleges that the defendants unnecessarily delayed providing him with access to, and use of, a "CPAP" machine. This machine assists persons who suffer from sleep apnea. Plaintiff complains that although he requested use of the CPAP machine in late 2004, while he was confined in FCI-Gilmer, he was not provided use of it until June, 2006.

In addition to his Eighth Amendment claim, the plaintiff alleges that the actions of the named defendants also violated his rights under the First, Fourth, and Sixth Amendments of the United States Constitution. Finally, the plaintiff asserts claims under the FTCA.

## RELIEF REQUESTED

The plaintiff seeks compensatory damages in the amount of $2,000,000.00 and punitive damages in the amount of $1,000,000,000. He demands a trial by jury and court costs. Although the plaintiff is proceeding *pro se*, he has requested attorneys' fees.

## ALLEGATIONS OF THE COMPLAINT
### 1. Events at FCI-Gilmer

The plaintiff was previously confined in FCI-Gilmer. He was transferred to USP-Big Sandy on May 20, 2005. Plaintiff alleges that several months before he was transferred to

3

USP-Big Sandy, he began experiencing breathing problems, sleep apnea problems, fatigue, stress, and anxiety. He complains that medical staff at FCI-Gilmer (in particular, Janet Bunts, the hospital administrator) failed to properly treat his condition.

Plaintiff alleges that he demanded that FCI-Gilmer provide him with a CPAP machine, which he claims assists breathing during sleep. Plaintiff further alleges that although Doris M. Williams disapproved his use of a CPAP machine on January 21, 2005, she did refer the plaintiff's request for the machine to a review committee. The committee and the warden of FCI-Gilmer denied the request on February 25, 2005.

After the plaintiff underwent additional sleep monitoring at FCI-Gilmer (by use of a polysomnogram), staff at FCI-Gilmer approved the issuance of a CPAP machine in April, 2005. Plaintiff alleges that FCI-Gilmer staff only promised the issuance of the CPAP machine because they knew Plaintiff would be transferred to another prison.

Plaintiff also alleged that on April 20, 2005, a correctional officer at FCI-Gilmer assaulted him and broke his wrist. Plaintiff alleges that the assault was motivated by religious and ethnic discrimination.

2.  Events at USP-Big Sandy

Plaintiff alleges that after he arrived at USP-Big Sandy, the prison officials there refused to provide him with a CPAP machine. The plaintiff recounts some of the results of the administrative appeals he pursued, including an unsuccessful appeal to the BOP's Regional Office. He states that Kim White, Director of the Regional Office, denied his BP-10 appeal on September 27, 2005, stating that there was no clinical evidence to support the

4

issuance of a CPAP machine.[2]

The plaintiff states that his demands were continually denied by USP-Big Sandy staff until February 1, 2006. On that date, Dr. Ramirez approved the issuance of the CPAP machine for Plaintiff. The plaintiff received the machine on June 22, 2006. Plaintiff states the machine has dramatically improved his sleeping, breathing, and overall quality of life.

### 3. FTCA Claim

Plaintiff states that on May 11, 2006, he filed a claim under the FTCA with the BOP. He states that the BOP denied his claim on September 4, 2006. Plaintiff attached no documentation, but he identified it as being Claim No. TRT-MXR-2006-03327.

### DISCUSSION

### I. Claims for Damages Against the United States and the BOP

The doctrine of sovereign immunity precludes the plaintiff attempt to recover damages from the United States and the BOP. Federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392 (1976); *Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. 159,166 (1985). The United

---

[2] The plaintiff makes no mention of any appeal to the BOP's Central office (BP-11). His complaint documents only subsequent efforts to argue his case before Suzanne Hastings, the Warden of USP-Big-Sandy.

5

States has not waived its sovereign immunity to monetary damages for constitutional torts. The plaintiff's claim for damages against the United States must be dismissed with prejudice.

Similarly, a lawsuit against an agency of the United States is, in essence, a suit against the United States. *See Kentucky v. Graham*, 473 U.S. at 166. The BOP is a federal agency. "Federal agencies may not be sued *eo nomine* except as authorized by Congress in 'explicit language.'" *Castleberry v. Alcohol, Tobacco & Firearms Div.*, 530 F.2d, 673 n.3 (5th Cir. 1976) (citing *Blackmar v. Guerre*, 342 U.S. 512, 515, 72 S. Ct. 410, 411 (1952)); *Brooks v. Graber*, 2000 WL 1679420 (D. Kan. November 6, 2000) (no authorization existed to name the Department of Justice because it cannot be sued under that name as a defendant; moreover, plaintiff's claims were barred by sovereign immunity and/or failure to state a claim of relief). Thus, the plaintiff's claim for damages against the BOP fails to state a claim upon which relief can be granted, and must be dismissed.

II. <u>Official Capacity Claims Against FCI-Gilmer Defendants; USP-Big Sandy Doctors; and BOP Defendants</u>

The plaintiff has not stated the capacity in which he is suing any of the defendants. Construing the complaint broadly, the plaintiff might be asserting his First, Fourth Sixth and Eighth Amendment *Bivens* claims against these defendants in their official capacities. However, the construed claims suffer from a fatal defect.

A *Bivens* claim is only properly asserted against individual federal employees in their *individual* capacities. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991). "[A] *Bivens* claim [for damages] may not be asserted against a federal officer in his official capacity." *Berger v. Pierce*, 933 F.2d 393, 397 (6th Cir. 1991) (citing *Holloman v. Watt*, 708 F.2d 1399,

1402 (9th Cir. 1983), *cert. denied*, 466 U.S. 958 (1984); *Sanchez-Mariani v. Ellingwood*, 691 F.2d 592 (1st Cir. 1982); *see also Schweiker v. Chilicky*, 487 U.S. 412 (1988); *Butz v. Economou*, 438 U.S. 478, 512-14 (1978)).

When damages are sought against federal employees in their *official* capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 847-75 (9th Cir. 1975). When a federal employee is sued in his or her individual capacity, the action is not a suit against the United States. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985). The only proper defendant in a *Bivens* claim is a person acting under color of federal law in that person's individual capacity.

Plaintiff has failed to state a claim upon which relief can be based against any of these defendants in their *official* capacities. These claims will be dismissed with prejudice.

### III.  Individual Capacity Claims Against FCI-Gilmer Defendants

The plaintiff complains about actions alleged to have occurred at FCI-Gilmer between October 27, 2004, and May 20, 2005, the date of his transfer to USP-Big Sandy. When federal officials are sued in their individual capacities, the venue provisions which operate in the typical case against the government itself do not control. In *Stafford v. Briggs*, 444 U.S. 527 (1980), the Supreme Court held that a suit properly brought against federal officials in their official capacities, for which venue would lie under 28 U.S.C. §1391(e), would not provide a basis for venue against such officials in their individual capacities.

A *Bivens* claim is only properly asserted against individual federal employees in their *individual* capacities. *Terrell v. Brewer*, 935 F.2d at 1018; *Berger v. Pierce*, 933 F.2d at 397. Individual capacity claims under *Bivens* would fall under 28 U.S.C. §1391(b). Official capacity suits under 28 U.S.C. §1391(e) cannot be maintained because of the doctrine of sovereign immunity. *Cf. Stafford v. Briggs*, 444 U.S. at 544 (Section 1391(e) applies only to suits against government officials in their official capacities; venue of *Bivens* actions governed by §1391(b)).

Title 28 U.S.C. §1391(b) provides that:

> [a] civil action where jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) *a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated*, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. {Emphasis Added}.

Clearly, neither §1391(b)(1) nor §1391(b)(3) applies in this action; consequently, venue could properly lie here only if a substantial part of the events or omissions giving rise to Plaintiff's claim occurred in the Eastern District of Kentucky. 28 U.S.C. §1391(b)(2).

The "substantial part of the events" giving rise to the alleged events between October 27, 2004, and May 20, 2005, occurred at FCI-Gilmer, not in the Eastern District of Kentucky. As noted, FCI-Gilmer is located in Glenville, West Virginia. The judicial district for Glenville, West Virginia, is the United States District Court for the Northern District of West Virginia. Under 28 U.S.C. §1391(b), the proper venue for the plaintiff's claims against the FCI-Gilmer defendants is in West Virginia. *See Barber v. Simpson*, 94 F.3d 648; 1996 WL

8

477005 (8th Cir. 1996) (table) (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)).

When a civil action is brought in the wrong district, the court may dismiss it or transfer it to the proper district. 28 U.S.C. §1406(a). Additionally, 28 U.S.C. §1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." (Emphasis added) [3] The decision to dismiss or transfer a case under §1406(a) is "within the district court's sound discretion." *First of Michigan Corp. v. Bramlet*, 141 F.3d 260, 262 (6th Cir. 1998).

Transfer of a proceeding based on improper venue is not mandatory, and is justified only if the district court determines that such transfer is "in the interest of justice." *See Diebold v. FirstCard Financial Services, Inc.*, 104 F. Supp.2d 758, 762-63 (N.D. Ohio 2000) (where district court lacked personal jurisdiction over the defendant, the interests of justice did not warrant transfer; dismissal in lieu of transfer would not prejudice the plaintiff because there was ample time in which to re-file in a proper forum).

The plaintiff's various *Bivens* claims alleged to have arisen at FCI-Gilbert between October 27, 2004 and May 20, 2005, may be subject to possible defenses such as statute of limitations and/or failure to exhaust. In light of these possible defects, this Court is not inclined to transfer the various constitutional claims against the FCI-Gilmer Defendants to

---

[3] Title 28 U.S.C. §1406(a) provides as follows:

The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, *or if it be in the interest of justice*, transfer such case to any district or division in which it could have been brought. (Emphasis Added)

9

the Northern District of West Virginia. The plaintiff is free to file suit there on that claim.

The plaintiff's First, Fourth, Sixth and Eighth Amendment claims against the FCI-Gilmer defendants, in their *individual* capacities, are dismissed without prejudice to the plaintiff asserting them in the Northern District of West Virginia.

IV.  Individual Capacity Claims Against USP-Big Sandy Doctors
A.  Standard of Review

In order to state a cognizable claim under the Eighth Amendment regarding medical care, a prisoner must show both "deliberate indifference" and a "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To substantiate an allegation of deliberate indifference, a prisoner must establish that the deprivation was sufficiently serious *and* that officials acted with a sufficiently culpable state of mind. *Caldwell v. Moore*, 968 F.2d 595, 602 (6th Cir. 1992).

The Eighth Amendment claims contain both an objective and a subjective component. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991). The objective component requires the plaintiff to show that he has been subjected to specific deprivations so serious that they deny him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S. Ct. 2392 (1981). The subjective component requires the plaintiff to demonstrate that prison officials acted wantonly, with deliberate indifference to the plaintiff's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S. Ct. 1970 (1994).

Deliberate indifference is the reckless disregard of a substantial risk of serious harm; mere negligence will not suffice. *Id.* at 835-36. Deliberate indifference has also been defined as "more than mere negligence, but 'something less than acts or omissions for the

very purpose of causing harm or with knowledge that harm will result.'" *Foy v. City of Berea*, 58 F.3d 227, 232 (6th Cir. 1995) (quoting *Farmer v. Brennan*).

Allegations of medical malpractice or negligent diagnosis and treatment are not cognizable under §1983. *See Estelle v. Gamble*, 429 U.S. at 106; *Birrell v. Brown*, 867 F.2d 956,958 (6th Cir. 1989). The concept of deliberate indifference has been equated with wantonness and with acts that are taken with criminal recklessness. *Brooks v. Celeste*, 39 F.3d 125 (6th Cir. 1994). An official must show a conscious disregard to a substantial risk that the inmate will experience serious harm. *Farmer v. Brennan*, 114 S. Ct. at 1979.

B. Application of Standard to Facts

The Court determines that the plaintiff has failed to state a valid individual capacity Eighth Amendment claim against either of the USP-Big Sandy Doctors.

1. Dr. Ramirez

The Court determines that the plaintiff has failed to state a valid Eighth Amendment claim against Dr. Ramirez. First, the plaintiff complains that Dr. Ramirez refused to authorize his use of a CPAP machine until February 1, 2006. He states that ". . . it took Dr. Ramirez, the clinical director, almost two years to approve the need and necessity use of a CPAP machine." [Record No. 2, p. 9] This assertion is patently at odds with the facts which the plaintiff meticulously outlined in his complaint.

Two years prior to February 1, 2006, would have been February 1, *2004*. As the plaintiff notes, he did not even arrive at USP-Big Sandy until May 20, *2005*. Thus, Dr. Ramirez could not have taken *two years* from February 1, 2006, to have secured approval for

11

the plaintiff's use of a CPAP machine. Moreover, the complaint fails to allege any acts or omissions on the part of Dr. Ramirez until February 1, 2006. On this date, the plaintiff states that Dr. Ramirez obtained approval for the plaintiff to obtain a CPAP machine.

Second, the plaintiff fails to identify or discuss, with any degree of specificity, Dr. Ramirez's involvement in his medical treatment *until February 1, 2006* (on which date Dr. Ramirez produced the result which the plaintiff wanted). *Bivens* requires a showing that the named defendant performed the acts that resulted in the deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76, 96 S. Ct. 598 (1976); *Bivens*, 403 U.S. at 390 n.2; *Williams v. Mehra*, 135 F.3d 1105, 1114 (6th Cir.1998).

There is simply nothing in the complaint assigning error to Dr. Ramirez. The claim against Dr. Ramirez is overly broad and conclusory. A court is not required to "conjure up unpled allegations." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). "A plaintiff will not be thrown out of court for failing to plead facts in support of every arcane element of his claim. When a complaint omits the facts that, if they existed, would clearly dominate the case, it seems fair to assume that those facts do not exist." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 437 (6th Cir. 1988).

2. <u>Dr. Vargas</u>

The plaintiff claims that Dr. Vargas's 2005 decision to deny approval for a CPAP violates the Eighth Amendment's prohibition against cruel and unusual punishment. He claims that Dr. Vargas was not entitled to reach a medical decision because it was contrary to the one previously reached by FCI-Gilmer medical staff.

It appears that the plaintiff was not satisfied with the conservative medical solutions offered to him. It is not that the plaintiff was *denied* medical care. The essence of the plaintiff's complaint is that there was *too much delay* in giving him the CPAP machine.

The plaintiff was, in fact, given a CPAP machine to use. When a plaintiff claims deliberate indifference to his serious medical needs but the case involves a difference of opinion between the plaintiff and a doctor regarding the plaintiff's diagnosis and treatment, no claim is stated. *Estelle v. Gamble*, 429 U.S. at 107; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Even if mistakes in diagnosis and treatment are made, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.[4]

At the most, the plaintiff disputes the sufficiency of the conservative course of medical treatment he has received at USP-Big Sandy. The BOP's responses, attached to the complaint, indicate that the plaintiff was routinely evaluated and that his condition was at all times given serious consideration. Plaintiff simply disagreed with the amount of time it took USP-Big Sandy Doctors to approve the issuance of a CPAP machine.

In summary, the plaintiff is criticizing the conservative course of treatment offered to

---

[4] There are numerous unpublished Sixth Circuit opinions which adopt *Westlake v. Lucas*'s holding that where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and to constitutionalize claims which would sound in state tort law. *See Wilson v. Wilkinson*, 62 Fed. Appx. 590, 2003 WL 1795812 (6th Cir. (Ohio) April 1, 2003) (Not selected for publication in the Federal Reporter); *Wooley v. Campbell*, 63 Fed. Appx. 789, 2003 WL 1795708 (6th Cir. (Tenn.) March 27, 2003); *Wright v. Sapp*, 59 Fed. Appx. 799, 2003 WL 1465184 (6th Cir. (Ky.) March 17, 2003); and *Simpson v. Ameji*, 2003 WL 236520 (6th Cir. (Ky.) January 30, 2003).

him by Dr. Vargas as being "inadequate." A dispute over the adequacy of medical care rendered to a prisoner generally does not rise to the level of an Eighth Amendment violation. *Westlake v. Lucas*, 537 F.2d at 860 n.5.[5]

Here, the plaintiff has not asserted grounds authorizing the Court to deviate from this rule. The plaintiff has established neither *deliberate* indifference to his medical condition, nor *any* culpable state of mind on the part of Dr. Vargas. The Eighth Amendment claim against him will be dismissed with prejudice. *See* 28 U.S.C. §1915(e)(2)(ii).

### V.  Individual Capacity Claims Against the BOP Defendants

The Court is required to dismiss the plaintiff's various constitutional claims against the BOP Defendants in their individual capacities. The plaintiff argues that the BOP Defendants supported the USP-Big Sandy Doctors' actions, after the fact, when he filed a grievance about the denial of the CPAP. Plaintiff alleges this action violated his rights under the First, Fourth, Sixth and Eighth Amendments of the United States Constitution. All of the plaintiff's claims against the BOP Defendants fall under the theory of *respondeat superior*.

The doctrine of *respondeat superior* cannot provide the basis for liability under §1983. Proof of personal involvement is required for a supervisor to incur personal liability under §1983. Liability cannot be imposed under a theory of *respondeat superior*. *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.) *cert. denied*, 469 U.S. 845, 105 S. Ct. 156, (1984); *see*

---

[5] To the extent the plaintiff may be alleging mere negligence in his medical treatment, such a claim should be asserted in state court, not federal court. Federal courts do not have jurisdiction over actions regarding "duties that are analogous to those traditionally imposed by state tort law." *Lewellen v. Metropolitan Govt., et al.*, 34 F.3d 345, 351 (6th Cir. 1994) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (citations omitted)).

*also Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir.1989); and *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 872 (6th Cir.1982) ("[Section] 1983 liability of supervisory personnel must be based on more than the right to control employees.  Section 1983 liability will not be imposed solely upon the basis of *respondeat superior*.")

"There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a §1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy*, 729 F.2d at 421.

Here, none of the BOP Defendants were involved with, or ordered or directed, the medical treatment about which the plaintiff complained.  Former Warden Hastings was a prison administrator, not a medical doctor.  In denying the plaintiff's grievance, she had the right to rely on the medical recommendations of the trained medical staff at USP-Big Sandy, including the findings of Dr. Vargas.  Likewise, Kim White and Harley Lappin, the higher ranking BOP administrators handling the appeal, legitimately supported Hastings' decision.

Ultimately, the CPAP machine was given to the plaintiff for his use.  The plaintiff was no doubt unhappy about the outcome of the grievance process until such time as he actually received the machine.  Although the prison later decided to give the plaintiff use of a CPAP machine, the Court cannot conclude that BOP's initial denial of his grievance amounted to deliberate indifference to the plaintiff's medical needs.

To the extent that the plaintiff alleges that the various BOP Defendants violated his

15

First, Fourth Sixth and Eighth Amendment constitutional rights by rejecting administrative grievances, those claims simply lack merit. There is no inherent constitutional right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467, 103 S. Ct. 864 (1983); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir.1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir.1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991).[6] In sum, the plaintiff's individual capacity claims against the BOP Defendants must be dismissed as frivolous.

## VI. FTCA Claim

The plaintiff has referred to, but has not produced for the Court's review, a copy of his FTCA claim ( TRT-MXR-2006-03327). The record is not sufficiently developed as to this claim. The Court will order the United States to answer the plaintiff's FTCA claim.

## CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) The plaintiff's First, Fourth, Sixth and Eighth Amendment *Bivens* claims against the United States and the BOP are **DISMISSED WITH PREJUDICE**.

---

[6] There are numerous Sixth Circuit cases which also hold that there is no inherent constitutional right to an effective prison grievance procedure. *Argue v. Hofmeyer*, 80 Fed.Appx. 427, 430 (6th Cir. (Mich.) October 30, 2003) (Not selected for publication in the Federal Reporter); *Overholt v. Unibase Data Entry, Inc*. 221 F.3d 1335, 2000 WL 799760, **3 (6th Cir. (Ohio) June 14, 2000) (Unpublished Disposition) (" In addition, Overholt did not state a viable First Amendment claim concerning the prison grievance procedure. The defendants were not obligated to 'properly' respond to Overholt's grievances because there is no inherent constitutional right to an effective prison grievance procedure. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991). Hence, his allegations that the defendants did not properly respond to his grievances simply do not rise to the level of a constitutional violation."); *Mays v. Wilkinson*, 181 F.3d 102 (Table), 1999 WL 282690 (6th Cir.(Ohio) April 28, 1999) (same.)

(2) The plaintiff's First, Fourth, Sixth and Eighth Amendment *Bivens* claims against the FCI-Gilmer Defendants, the USP-Big Sandy Doctors and the BOP Defendants, in their *official* capacities, are **DISMISSED WITH PREJUDICE**.

(3) The plaintiff's First, Fourth, Sixth and Eighth Amendment *Bivens* claims against the FCI-Gilmer Defendants, in their *individual* capacities, are **DISMISSED WITHOUT PREJUDICE**.

(4) The plaintiff's Eighth Amendment *Bivens* claims against the USP-Big Sandy Doctors, in their *individual* capacities, are **DISMISSED WITH PREJUDICE**.

(5) The plaintiff's First, Fourth, Sixth and Eighth Amendment *Bivens* claims against the BOP Defendants, in their *individual* capacities, are **DISMISSED WITH PREJUDICE**.

(6) The Clerk of the Court is directed to reclassify this action as one falling solely under the FTCA, Title 28 U.S.C. §§1346(b), 2761-2680.

(7) The United States is the sole defendant in this FTCA action.

(8) The United States is directed to filed a response to the plaintiff's FTCA claims of negligence and/or medical malpractice.

(9) The Pikeville Clerk is directed to issue summons for the Attorney General of the United States of America and for the United States Attorney for the Eastern District of Kentucky.

(10) The Pikeville Clerk's Office shall prepare as many copies of the complaint as there are summonses issued and complete the requisite number of USM Form(s) 285.

   (a)  If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

   (b)  The Pikeville Clerk's Office shall forward by certified mail the following documents: (i) the summonses issued; (ii) the requisite number of USM Forms 285; (iii) the requisite number of complaint copies; (iv) the requisite number of copies of this Opinion and Order; and (v) any other documents necessary to effectuate service.

   (c)  The Pikeville Clerk's Office shall enter the certified mail receipt into the record and a notation that the delivery to the USM Office of the complaints, summonses, USM Forms 285, and any other attachments have been effectuated, and the date upon which they were effectuated.

   (d)  The USM Office shall serve a summons, complaint copy, and copy of this Order on the defendants to this action; service to be made by certified mail, return receipt requested, or by personal service.

   (e)  The USM Office shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

  (10)  The plaintiff shall keep the Clerk of the Court informed of his current mailing address.  **Failure to notify the Clerk of any address change may result in a dismissal of this case**.

18

(11)     For every further pleading or other document he wishes to submit for consideration by the Court, the plaintiff shall serve upon each defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document. The plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  **If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk, or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.**

This the 21st day of March, 2007.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge